Here the next case, Lee v. Garvey Good morning. Good morning. May it please the court. This case involves a motor vehicle collision at Wulda 303 in Orangeburg, New York. Our clients, the plaintiff's appellants, were driving northbound on a 40 mph zone rural highway, and a young woman who was a novice driver ran a stop sign and collided into the vehicle. The resulting injuries were various, and both husband, Mr. Lee, and wife, Mrs. Bae, suffered damage to their knees. Months later, they had operations through arthroscopy. It was determined that both of them had similar injuries, including torn meniscus. The question that was presented to the trial court on Rule 50 motion, of all things, was whether or not we had sufficient grounds to get to a jury. As a procedural footnote, I thought the question was whether or not there was a serious injury under New York Insurance Law 5104A as defined under 5102D. As we understand it, and that is one of the issues That's a threshold question, isn't it? That was a threshold question, Judge. Isn't that what this case is really about here? It's not a question of sufficiency of the evidence as far as the injury occurred. I don't know that it's really contested. Maybe it is. Well, I think the permanency of the injuries is contested. That part is, because that's relevant under these sections. We understand that, but the way the magistrate judge grounded her decision was by analyzing the very fact-intensive nature of the testimonies rather than taking them as true as required by state law. There are two strands of- Where in the record is there evidence other than your expert as to any of these harms? That is primarily the- I mean, are there New York requirements that there be in the record other than an expert testimony that the torn meniscus was operated on, that there were these head and knee injuries, and so on? No, Your Honor. And juries are routinely not shown medical records, and medical testimony is routinely based on- Yeah, but at the question of seriousness, is that needed in the record in New York? It is not, because in the- I think that question is a question of how the federal courts process evidence in the courtroom under the federal rules of evidence rather than under the state rules of evidence. By the way, who brought this case in federal? We did, Judge. You did? You brought it in federal? We did. It was not removed. We brought it as an original action. Because it's very unusual to have these seriousness things in federal court. They come up all the time in state court, and state courts go every which way on them. As a matter of fact, Your Honor, as Your Honor just touched upon, there are two strands of cases in the state courts, one followed by the second department and one followed by the first department, and there's internal strife there. The state court has not resolved that internal strife. There is no doubt that the question of whether a torn meniscus is, by itself per se, is something that there is a split on the state courts. There is- There is a split on whose burden it is to show seriousness. The magistrate judge said it was your burden, and just last week, a Supreme Court decision I have here said the opposite. So, again, the New York courts go every which way on whose burden it is to show seriousness. Exactly, Your Honor, and that's why when the state of the state law is in strife, the federal court sitting in diversity applying state law must send that to the jury. It can't rule as a matter of law. I thought that we should send it to the state. That's why I'm so puzzled that you're having brought it in federal court, when the state law is such a mess that no state court could possibly- federal court could possibly decide- I think Your Honor is suggesting a possible certification to the New York Court of Appeals, and maybe that's in order, but at least at the trial level when we had the case, on a Rule 50A motion, the judge should have sent it to the jury with an instruction that really follows the statutory language and the various conflicting, at least the two strands of the case law that came from the Second Circuit- Second Department and the First Department. We just remind the court that in the First- I thought that you were also saying that the district court erred in holding that judicial estoppel did not preclude defendant from contesting whether plaintiff suffered serious injury. We're also arguing that, and here's the reason I think the district court disregarded that. I think the fact that the defense expert- Before you get to that, could you just help me with this? You cite a minute entry from the pretrial conference, right, which references a four-day damages-only trial. Yes, Your Honor. Now, the district judge, of course, was present for the pretrial conference, and the judge doesn't appear to have said or been persuaded by the view that a concession occurred or that the minute entry reflected what happened. Is that correct? That is correct. We found out only later that that specific conference had been conducted off the record. We therefore- Even if the defense counsel had conceded liability, right, this concession, as I understand it, would not have precluded defendant from contesting the seriousness. It would have made it much more difficult. We maintain respect- More difficult is not the same as a concession for purposes of collateral estoppel. We understand that there is no concession on the record. We tried to press for that ruling from the district judge. I'm a little confused about the liability question when it comes to conceding liability is not the same thing as damages. I thought it was like a contributory to fault that they were talking about. Yes, Your Honor. So how does that relate to the damage, the seriousness of the injury part? It is unrelated to the specific core issue as to the damages. On the damages question, as the panel has already observed repeatedly, the state of the state law is in strife, and that takes the case to a jury and not a mechanical ruling by the district court based on factors that only the jury is supposed to consider. And that's the issue that we bring, and we request a remand to another panel. May I ask you about the statute itself involving serious injury? There are a lot of different clauses- Yes, Your Honor. In that statute. And your brief, as I look at it, doesn't identify the clause or specific clauses which you're dealing with. Are you focusing on the permanent consequential limitation of use of body, organ, or member? Is that your- That's correct, Judge. Or significant limitation of use of body function or- We're relying on both parts of the first disjunct. There is a large disjunct in the middle of the statute where it says, or a medically determined injury or impairment. That's the second disjunct, and we're not relying on that part. We're relying on the part that precedes that. And to the two specific phrases Your Honor identified, and those two phrases have caused all of the chaos in the state courts. Well, can you help me with this then? Can you point to, I understand that there are differences in New York State laws, Judge Calabresi has pointed out, and you've pointed out. But can you point to me a case, a New York case, where a serious injury was established when the evidence showed that the plaintiff underwent surgery to repair a meniscus tear. And post-surgery, the plaintiff's own experts testified that the knee had full range of motion, exhibited negative results on all orthopedic tests, and was objectively normal. Your Honor, as all experts understand, the range of motion tests that are conducted at specific time intervals- Can you answer my question? The judge asked whether you can point to a case that says that even though after the operation there was no further treatment and everything seemed fine, that that is serious. The cases that we cite in our brief, essentially from the First Department to Your Honor's question, first is Johnson v. Singh, 32 miscellaneous, third- And you say that those cases, say that a torn meniscus is serious in itself, do you say that that is so even if after the operation everything is fine? We do maintain that because a range of motion test on one day does not define that person's ability and movements throughout the days that follow the surgery. Does the First Department say that a torn meniscus is a per se serious injury for purposes of this law even if after an operation everything is fine? Your Honor, the words per se are omitted, but here is a direct quote. While there are no case squarely addressing the issue of whether MRI films indicating tears of the meniscus by themselves are sufficient to establish the existence of a serious injury, this Court concludes that said evidence alone is sufficient to establish the existence of a serious injury. And this is a quote out of Johnson v. Singh. So you say that the case that the Chief Judge asks for is the Johnson case because it says that the torn meniscus is per se that. That's what you're saying? Just the per se words- They don't use the word per se, but that's the effect. That's the essence. And we also have cases like Noriega v. Sarhaft, Rangel-Vargas v. Virtio. There's a cluster of cases primarily out of the First Department that say if you have torn meniscus plus surgery, you get to a jury and all of the questions about range of motion, day-to-day activities, the ability to function, whether there was recovery or not post-op, those are all jury issues that the jury alone should consider and not the court sitting on a 58 motion. You only get to a jury once you have a serious injury, and that's where we are. Thank you. Agreed, Your Honor. That's the case law analysis. Thank you. You'll have three minutes. Thank you, Your Honor. Morning. May it please the court. My name is Bill Fitzgerald. I represent the defendant. As the court correctly ascertained, this case is about a statute. The plaintiffs are not permitted to bring a lawsuit in New York for injuries arising from an automobile accident unless they can prove a serious injury, as defined under the statute. And as Magistrate Judge Lisa Smith correctly determined, the plaintiffs fail to meet that burden. Whose burden is it? The plaintiffs have to make a prima facie case on their case before arresting that they've sustained a serious injury before the case can even go to the jury. No, no. I'm not talking about going to a jury. Last week, the Supreme Court said expressly that it is the defendant's burden to show that it is not a serious injury. Your Honor, I heard you say that before, and I'm not familiar with that case. I must have missed it. But I understand what you're talking about. There's no doubt, on a motion for summary judgment, clearly I would have a burden to show there's no serious injury. However, we are at trial. The plaintiff now has the burden of proof. They have to prove... The case is Guadagno v. Glenn Oaks. It came down on October 18th, 704798-15. That's a Supreme Court case, lowest court. On the other hand, the lowest court in a question of state law has more to say about it than we do. Absolutely, Your Honor. But the appellate division of the State of New York has ruled overwhelmingly, not only in the Second Department, but also in the First Department, that the plaintiff has to prove a serious injury at trial. It's the plaintiff's burden. And they failed to meet that burden. How do we know that? They went into an ER, transported by ambulance, and they made extremely mild complaints. They asked, what's the intensity of your pain, Ms. Bay? One out of ten. That doesn't preclude the possibility that pain could arise later. You're absolutely right, Your Honor. In a few days and so forth, that could happen. And the torn meniscus was determined by an MRI, right? Yes, Your Honor. That was not that long after the accident. And there was no proof that it was causally related. Plaintiff's expert. Wait a minute. Wait a minute now. That's a jury question, isn't it? No, Your Honor. Dr. Stein, plaintiff's own expert, admitted that torn menisci can happen degeneratively and chronically. He could not causally relate it. He admitted it. Now, let's separate arguments. The question of whether a torn meniscus is in New York enough to constitute a prima facie case of seriousness is one thing. And that's a question on which there is an issue about whether there's a division in the state courts. The question of causation is a different one. And there, I would suggest to you that since Martin V. Herzog, when Chief Judge Cardozo said, if something is likely to be dangerous because it causes something, then it is the defendant's burden to show that it didn't cause it in the particular case. One of the things that an automobile accident, which a negligent defendant does, may be to tear a meniscus. So at that point, causation is enough. I know the magistrate judge had doubts about that, but the magistrate judge, that was his problem, not a problem. Causation isn't really in this case. Well, Your Honor, they made no complaints of knee pain in the ER. If they had a traumatically torn meniscus, they'd be symptomatic. That's what the doctor said. You're right, Your Honor. I don't even need that. However, the key is, as Your Honor has correctly ascertained and apprehended, both plaintiffs have made a full recovery following their arthroscopic surgery. They have full range of motion. In terms of causality, though, you've got the Nyack Hospital records, right? And if you combine those records with the Stein testimony regarding the herniated disc in the cervical spine area that was visible in the 2000 MRI, doesn't that at least raise a question? Well, Your Honor, again, if there was proof of causation. People have herniated discs developing chronically, not as a result of any trauma, and neither plaintiff had any complaint of back pain in the ER, yet they're claiming lumbar herniations. There's no evidence at trial that Judge Smith heard. As Judge Walker said, sometimes the effects of an injury are something that are not immediately apparent. You're absolutely right, Your Honor. Or immediately felt. It could be two days later. It could be a week later. I'm glad you said two days later, Your Honor. Two days after the accident, Ms. Bay walked her children to school. Now, if she had a traumatically torn meniscus in her left knee, would she have done that? I wonder. Now, again, I'm not saying the plaintiff's claims are false. I'm just saying they failed to deduce sufficient proof to get to a jury, and Judge Smith correctly apprehended that there was nothing to submit to the jury in this case. Let me try to focus on your argument. Is your argument that they failed to show enough evidence that the torn meniscus, both of which were operated on, and that is clear that they were operated on, was caused by defendant's negligent caused accident, or is your argument that the torn meniscus was, in this case, not sufficient to be a serious injury? Under this law, without a serious injury, you do not get to a court case at all. Or is it both? I would argue both, Your Honor. There's no evidence that the meniscus was causally related to this accident, and the orthopedic surgeon did not testify. So how do we know what he saw when he put that scope into the plaintiff's knees? We have no evidence. There was no evidence at all in this trial other than the hospital record. Can I ask a question about the first MRI, which I think was taken two months after the accident. Is that correct? Approximately. And that was taken of the lower back and the knees, correct? And the torn meniscus was revealed in the knee test, right? According to the radiologist who interpreted the MRI. And Dr. Stein said at that point that there was no prior history of tears of the meniscus, and therefore concluded that the accident caused those particular injuries. That was Dr. Stein's professional opinion, yes. That's what I want to know. However, we know both plaintiffs have made a full recovery, and the only sequela that their expert gave them was a 10% loss of lumbar flexion. And even Dr. Stein admitted that he can't even say that's causally related to the accident. Some people can flex more than... I want to go back to the Johnson case and to the claim by appellants that a torn meniscus is at least in one department sufficient to constitute seriousness for purposes of this law. If you were shaking your head when they were making that argument, I'd like you to do more than shake your head and tell me why that isn't what the First Department, perhaps correctly, perhaps not, says in an issue of New York law. Your Honor, first I'll tell you I have not read the Johnson case. However, I will speculate that the plaintiff in the Johnson case might have some permanent sequela following the surgery, perhaps restricted flexion. That may be. And it may well be that New York law is that a torn meniscus is prima facie per se, but then if there are no sequelae, it is not. That may well be. But if there are cases in New York which say it is sufficient to be serious to have that and to have to have an operation, which they may have, you know, what is seriousness is, I don't know what it is, and I know that the New York cases are all over the place, then we don't have clear New York law. Your Honor, there is clear New York law. One lower court decision does not wipe away decades of appellate-level case law that... ...appellate division is not some simply lower court. If the appellate division has one case and there is no decision of that court of appeals on the issue, then we have a split in New York law. I am not familiar with a court of appeals case that specifically touched on the issue of a torn meniscus. I don't... There are multiple. There may be one, but I haven't found one. I haven't found it either, Your Honor, but certainly in the appellate division, in both the first and the second department, a torn meniscus is not per se a serious injury. You've got to have more. And the plaintiffs in this case did not show anything more. They clearly made a full recovery according to both medical experts who testified. They had full range of motion of their knees. They had no restrictions. There's no 90-180 restriction when Ms. Spey is walking her children to school two days after the accident. They both went about their daily lives. They had no problems at all until they started getting treatment. They had supposedly got physical therapy, chiropractic, acupuncture for many months, but, again, there was no evidence of this other than from the plaintiffs themselves. We had no treating physicians testifying on behalf of plaintiffs about what their contemporaneous complaints were, what the findings were. All we know is Dr. Stein's opinion, who saw each plaintiff one time two and a half years after the accident and is relying upon their subjective complaints and opinions about causation. So, hence. Let me ask you, if I could, about your adversary's judicial estoppel argument. Your brief doesn't address it. What's your does that mean? I didn't address it, Your Honor, because it doesn't really make any sense to me. That's not a reason not to address it. All right. Let's say I concede liability. Let's say that for purposes of this appeal. How does that have any bearing at all on Judge Smith's decision to grant my 50 motion? The logic eludes me. I mean, I submit there was a liability dispute the jury needed to resolve, and whether I'm judicially estopped from offering a liability defense is neither here nor there as far as I can perceive. Had the jury given me a defense verdict on liability, this court would certainly need to grapple with that. But under these circumstances, I was mystified why plaintiffs spent so many pages in his brief talking about judicial estoppel and liability and concessions of liability I had supposedly made before Judge Roman, which I certainly had not. We had a meritorious liability defense, which I was going to offer with my client, had Judge Smith not granted my Rule 50A motion to dismiss. I'll get into that if Your Honor wants, but it seems like a waste of time under these circumstances. Thank you. Mr. Kim. Your Honors, to Judge Calabresi's comment about the recent case talking about the burden of proof, we argued in opposition to the Rule 50A motion that the burden is on the defense to show that we did not suffer a permanent injury. Well, it certainly wouldn't be on the defense. It's summary judgment. Well, a summary judgment, whether it's 56 or 50A, the posture is the same. It's the defense seeking dismissal of the plaintiff's claim. The defense had to adduce enough evidence or sufficient evidence that we did not have a basis to go to the jury. Well, the judge makes a decision based upon the evidence that's there at the time the Rule 50 motion is made. We understand that. Whoever produces it. That point is secondary to the core question whether or not the torn meniscus plus operation plus all of the— Right. Now, what department was Johnson in? Johnson was a Supreme Court case, I believe, in Newark County. First department. First department. First department. And it cites to a number of cases the only cases that are extant within the first department, and they're better reasoned than the second department cases. That was decided— Tell us. I'm sorry. Let me just find out. That was decided what year? Do you know the Johnson case? Johnson, I believe—I don't have the year, but it was 32 miscellaneous thirds, so it's a recent case, Your Honor. Yeah. There's apparently another case, Mulligan v. City of New York, that held in the first department that a tear of a meniscus standing alone without any evidence of limitations caused by the tear is not sufficient. I'm not aware of that case. That may be a municipal court case, Judge, which is not the same as— First department. 120 A.D., first department, active at 1155. You claim— That case didn't come up, Judge, in our research, but— You claim—it doesn't matter whether it came up or not. You claim that there is a split in the first and second department— Yes, Your Honor. —on the question of whether a torn meniscus by itself is sufficient. Yes, Your Honor. And that's based on the Johnson case? Primarily, and the cases that are cited in Johnson, and there's a number of them, including, ironically, a second department case. But the first department cases do say when you have a meniscus tear plus a surgery, you get to a jury. Even if there are no permanent consequences of the meniscus tear. That's our understanding, and even if the cases discuss about permanency in the factual portion, the core holdings of those cases essentially say when you have one plus two, then you have three, which is a jury. Well, that's the question. And that's—frankly, I am not very comfortable with the citation of cases on all sides here about whether there is this kind of conflict. Well, we think there are more unreported cases than reported cases in the state courts because they're not comfortable with this question. And the legislative committee, the insurance committee, who has a bill to amend the statute, 5102, made comments to the effect that the courts have been getting it wrong when they were denying a jury, when denying a trial with people who had surgery. If you're going to attack all of the appellate division cases that cut against you by virtue of a fact that there is a body of thought that they all got it wrong, I'm not sure that that's a sufficient basis for us to rule. We're not suggesting that, Your Honor. All we're saying is that the legislature has expressed a concern that is very rare, and it has not been acted upon, but it has created strife. Isn't there really a more fundamental problem that you have if you strip everything away, that in this case there is no objective evidence that your clients experienced permanent, consequential limitations of use? In addition to our client's testimonies, which Your Honors have already reviewed in the record, I'd like to specifically highlight— I'm focusing on your own expert's testimony. Our expert has stated that on that specific date that he examined them, the range of motion was acceptable, Your Honor, but— Then what do you do with an expert? The question is, is there any evidence of permanent injury? That question is one on which there is nothing in the record and which your expert does not say that there was. So unless you have—you can show to us that there is a holding by sufficient court to create a split, that a torn meniscus satisfies that regardless of any evidence of later harm, then you haven't made out your case. If there is this split, then that is enough. But if not, the question is, what evidence of permanence do you have when there is nothing in the record to suggest it and your own expert says on a particular day it was okay? Our expert, Dr. Stein, testified that both plaintiffs have lumbar herniation, cervical herniation. They are able to function and their range of motion was acceptable, but they have residual injury. The fact that their knee apparently recovered does not state the whole case. The defense expert himself testified that by definition, if you have a tear in the meniscus and it's not in the healing zone, it would be considered permanent. So even if you have a repaired meniscus, part of it is gone forever. And because it's gone forever, your functionality is less than it was before the operation, and it will only progressively get worse in time. And that's why the First Department cases... That is why it is possible for a court to have said that is enough in itself. It doesn't mean it has to. And what I want to know is whether it is really the case that some courts in New York have said it is enough and others have said it is not. Our reading of the cases that we rely upon in our briefs is exactly that, that because the other factors go to the question of fact and question of credibility, once you have a tear plus operation, you get to a jury. The defense can argue all they want about there only being no range of motion issues and everything else to the jury. Thank you. Thank you very much. Thank you for your arguments. The court will reserve decision.